## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SEVEN SPRINGS MOUNTAIN RESORT,　）
INC. f/k/a SEVEN SPRINGS FARM, INC.,　）
on behalf of JEFFREY J. SIKIRICA,　）
CHAPTER 7 TRUSTEE of DYNAMIC　）
BUILDING CORPORATION,　）　　Civil Action No. 3:21-cv-6
　　　　　　　　　　　　　　　　　）　　Judge Stephanie L. Haines
　　　Plaintiff,　）
　　　　　　　　　　　　）
　vs.　）
　　　　　　　　　　　　）
JOHN M. HESS, TERRI HESS, DBC REAL　）
ESTATE MANAGEMENT, LLC, and DBC　）
CONSTRUCTION, LLC.,　）
　　　　　　　　　　　　　　　）
　　　Defendants.　）

### OPINION[1]

Plaintiff Seven Springs Mountain Resort, Inc. f/k/a Seven Springs Farm, Inc., on behalf of

Jeffrey J. Sikirica, Chapter 7 Trustee of Dynamic Building Corporation ("Plaintiff") brings this

action to enforce a state court judgment against Defendants John M. Hess, Terri Hess, DBC Real

Estate Management, LLC ("DBC Real Estate") and DBC Construction, LLC ("DBC

Construction") under Pennsylvania's veil piercing doctrines. Defendants all filed Motions to

Dismiss Plaintiff's Amended Complaint for Failure to State a Claim (ECF Nos. 28, 30, 32, and

34). Defendant Terri Hess has also filed a Motion for Leave to File *Instanter* Dispositive Judicial

Admissions by the Trustee and New Legal Authority in Support of Defendant Terri Hess's Motion

---

[1] On March 31, 2022, the Court entered a text order (ECF No. 66) denying Defendants' Motions to Dismiss (ECF No. 28, 30, 32, and 34) and Defendant Terri Hess's Motion for Leave to File *Instanter* Dispositive Judicial Admissions by the Trustee and New Legal Authority in Support of Defendant Terri Hess's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 56) and Motion for Leave to Submit Matters Outside the Pleadings Pursuant to FRCP Rule 12(d) (ECF No. 63). This Opinion setting forth the reasons for the denials now follows.

to Dismiss Plaintiff's Amended Complaint (ECF No. 56) and a Motion for Leave to Submit Matters Outside the Pleadings Pursuant to FRCP Rule 12(d) (ECF No. 63).  For the reasons stated below, the Court DENIES Defendants' Motions to Dismiss (ECF Nos. 28, 30, 32, and 34) and Defendant Terri Hess's Motions filed at ECF Nos. 56 and 63.  However, the Court's denial of Defendants' Motions to Dismiss (ECF Nos. 28, 30, 32, and 34) is without prejudice to Defendants renewing their arguments at summary judgment and/or trial, as appropriate.

## I.      Factual and Procedural History

The following facts pleaded in Plaintiff's Amended Complaint (ECF No. 24) are accepted as true for the purpose of Defendants' Motions to Dismiss (ECF Nos. 28, 30, 32, and 34):

Plaintiff contracted with Dynamic Building Company ("DBC") to serve as a contractor and construction manager for a $77 million dollar townhome project known as Southwind at Lake Tahoe ("Southwind") located at Seven Springs' resort in Somerset County, Pennsylvania (ECF No. 24 at ¶ 21).  Plaintiff alleges Defendants John M. Hess ("Hess") and Terri Hess ("Terri Hess") are spouses who were the shareholders of DBC and exercised control over DBC.  *Id.* at ¶¶ 2-4.

Southwind was constructed between 2005 and 2009 in three consecutive phases totaling 154 units.  *Id.*  Plaintiff alleges that throughout the construction of Southwind, Hess regularly visited the jobsite to review the work.  *Id.* at ¶ 22.  After the various phases were completed, sold and occupied, Hess learned that the finished units had serious water infiltration problems.  *Id.* at ¶ 23.  Plaintiff attempted to address the water infiltration issues with Hess, as the president of DBC, including direct correspondence with Hess and multiple in-person meetings with Hess.  *Id.* at ¶24.  Plaintiff pleads Hess was aware of the magnitude and extent of water infiltration problems, understood there were problems with the Southwind units, and represented on numerous occasions that effective repairs would be made.  *Id.* at ¶25.  Plaintiff also claims Hess represented that the

problems had been corrected by a "leak crew" he employed, but the crew did nothing more than apply caulk and Kilz paint to hide the water stains and did not fix the underlying problems. *Id.* at ¶¶27-28.

Plaintiff pleads that Hess was confronted with the continuous water infiltration problems but denied responsibility, made excuses for the water leaks, abandoned the project, and threatened to file for bankruptcy, apparently stating to the Seven Springs' CEO that "I will just close up my company, file for bankruptcy, and just walk away, and you guys can, you know, deal with it." *Id.* at ¶¶29-30.  When DBC failed to make the necessary repairs, the Southwind residents sued Plaintiff in two class actions and a number of individual lawsuits. *Id.* at ¶31.  The suits were resolved by Plaintiff making the repairs to the units, and Plaintiff obtained assignment agreements from over 100 Southwind unit owners for the owners' tort-based claims against DBC, including their Unfair Trade Practice and Consumer Protection Law ("UTPCPL") claims. *Id.* at ¶¶31-32.

Plaintiff then filed suit against DBC to recover money damages for the cost of repairs to the Southwind units ("Southwind Litigation").  In addition to the owners' claims, Plaintiff asserts it alleged legal theories of breach of contract, including breaches of express and implied warranties, professional negligence, and common law indemnity. *Id.* at ¶19.  The parties agreed to arbitrate their claims, and on March 1, 2019, the arbitrators entered an award of $13,901,028.20 for Plaintiff and against DBC.  Plaintiff's award against DBC was then confirmed by a final order from the Court of Common Pleas of Somerset County, Pennsylvania dated April 29, 2019 (ECF No. 24-4) ("state court judgment").  Plaintiff alleges the amount, with interest, is now $15,570,000.00 (ECF No. 24 at ¶¶ 19-20).

During the Southwind Litigation, Plaintiff pleads that Hess gave no indication of DBC's inability to undertake meaningful repairs or pay a final judgment. *Id.* at ¶ 34.  Hess offered every

indication that DBC was functioning normally, testifying in the Southwind Litigation that DBC was currently active on a construction project involving fifty (50) townhome units in the Foxmoor development. *Id.* at ¶ 35. Plaintiff also contends that it lacked any ability to inquire into DBC's financial condition during the time period of the repairs and Southwind Litigation. *Id.* at ¶ 34. Following entry of the state court judgment, DBC refused to satisfy that judgment. *Id.* at ¶ 37. When Plaintiff attempted discovery in aid of execution on the judgment, DBC objected to the discovery, and Hess filed the Chapter 7 Bankruptcy as to DBC. *Id.* at ¶ 38.

In support of its requests for veil piercing, Plaintiff pleads the Hesses drained money from DBC and caused DBC to no longer have the financial resources to make the repairs to the Southwind units. *Id.* at ¶26. Further, Hess continues to own and operate over seventy (70+) other entities using the nomenclature "DBC Group," including Defendants DBC Real Estate and DBC Construction. *Id.* at ¶45. Defendant DBC Real Estate has placed over $60 million in private equity in direct investments in multi-family properties with a portfolio value in excess of $300 million. *Id.* at ¶46. DBC Real Estate and DBC Construction are solely owned by Hess, operate from the same headquarters as DBC and the other DBC Group entities at 51 Pennwood Place, Suite 200, Warrendale, Pennsylvania, and share equipment, employees, and a computer server with these entities. *Id.* at ¶50. Plaintiff alleges documents produced by DBC reflect that the Hesses routinely moved funds – often hundreds of thousands of dollars – between their personal accounts, DBC accounts, DBC Real Estate Management accounts and the account of DBC Construction LLC. *Id.* at ¶51. Plaintiff also pleads the Hesses also comingled their personal affairs and finances with that of DBC, paid personal expenses with corporate assets, failed to maintain corporate formalities, ran DBC in an undercapitalized state, and strategically drained DBC of all assets of value. *Id.* at ¶¶ 40, 52-73. Plaintiff contends these facts demonstrate the Hesses controlled the business and

financial affairs of DBC and engaged in a corporate shell game with the "DBC Group" entities, which includes DBC Real Estate and DBC Construction. *Id.* at ¶¶ 40, 44-51.

On November 23, 2020, United States Bankruptcy Judge Taddonio entered an order to authorize Plaintiff to file the instant matter on behalf of Bankruptcy Trustee Sikirica ("Bankruptcy Trustee") (ECF No. 24-2). The order also provides that any recovery in this action would belong to the bankruptcy estate and would be apportioned among and for the benefit of all qualified creditors. *Id.*

As to the relevant procedural history, Plaintiff's Amended Complaint (ECF No. 24) is the operative complaint in this matter. On May 3, 2021, Defendants filed their respective Motions to Dismiss Plaintiff's Complaint for Failure to State a Claim (ECF Nos. 28, 30, 32, and 34) and briefs in support (ECF Nos. 29, 31, 33, and 35). On May 25, 2021, Plaintiff filed its Omnibus Opposition to Motions to Dismiss of John M. Hess, Terri Hess, DBC Real Estate Management, LLC, and DBC Construction, LLC (ECF No. 39). On June 11, 2021, Defendants filed their respective Reply Briefs (ECF Nos. 43, 44, 45, and 46). Plaintiff then filed its Omnibus Sur-Reply in Further Opposition to Replies in Support of Motions to Dismiss of John M. Hess, Terri Hess, DBC Real Estate Management, LLC, and DBC Construction, LLC (ECF No. 49).

On August 19, 2021, Hess filed a Notice of Authority relating to the Pennsylvania Supreme Court's ruling in the case *Mortimer v. McCool*, 255 A.3d 261 (Pa. 2021) (ECF No. 52). DBC Real Estate and DBC Construction also filed a Notice of Supplemental Legal Authority in Support of their Motions to Dismiss (ECF No. 53) on the same basis. On August 24, 2021, Terri Hess filed a Motion for Leave to File *Instanter* Dispositive Judicial Admissions and New Legal Authority in Support of Terri Hess's Motion to Dismiss the Amended Complaint (ECF No. 56). Plaintiff initially filed a Motion to Strike Defendants' Notices (ECF No. 54), but following a status

conference on the issue (ECF No. 58), the Court denied the Motion to Strike (ECF No. 54) and provided Plaintiff leave to respond to Defendants' notices of authority.  Plaintiff then filed its Omnibus Reply to Notices of Authority of Defendants John Hess, Terri Hess, DBC Real Estate Management, LLC and DBC Construction, LLC (ECF No. 60).  On September 30, 2021, the Court held oral argument on Defendants' Motions to Dismiss (ECF No. 62).  At the oral argument, Terri Hess requested leave to file a motion under Rule 12(d) to submit supplemental documents, and the Court granted this request.  Accordingly, on October 1, 2021, Terri Hess filed her Motion for Leave to Submit Matters Outside the Pleadings Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure in Support of Defendant Terri Hess's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 63).  On October 8, 2021, Plaintiff filed its Reply in Opposition to Motion to Submit Matters Outside the Pleadings Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure in Support of Defendant Terri Hess's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 65).

This matter is now ripe for disposition.

## II.   Legal Standard

The main issue before the Court is whether Plaintiff's Amended Complaint (ECF No. 24) has sufficiently alleged a claim to relief under Pennsylvania's veil piercing doctrines.  The Court addresses the federal pleading standard under Rule 12(b)(6) and Pennsylvania's veil piercing doctrines below.

### A.  Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 664. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.* To avoid dismissal, plaintiffs "must allege facts to 'nudge [their] claims across the line from conceivable to plausible.'" *Mann v. Brenner*, 375 F. App'x 232, 235 (3d Cir. 2010) (quoting *Bell Atl. v. Twombly*, 550 U.S. at 570). The question is not whether the claimant "will ultimately prevail…but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted).

## B. Pennsylvania's Veil Piercing Doctrines

Plaintiff brings this action to pierce the corporate veil and hold Defendants liable for the state court judgment against DBC. Specifically, Plaintiff asserts John and Terri Hess may be held liable for the judgment under the alter ego theory of veil piercing, and DBC Real Estate and DBC Construction may be held liable for the judgment under the enterprise theory of veil piercing.

### 1. Alter Ego Theory

Pennsylvania state and federal courts consider the following non-exclusive factors to determine an individual owner/parent company's derivative liability: (i) its subsidiary's gross undercapitalization for its purpose; (ii) failure to observe corporate formalities; (iii) nonpayment of dividends; (iv) the insolvency of the subsidiary; (v) siphoning of funds of the corporation by the dominant stockholder; (vi) nonfunctioning of other officers or directors; (vii) absence of corporate records; and (viii) whether the corporation is merely a facade for the operations of the dominant

stockholder or stockholders. *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981) (mirroring the factors set forth in *Lumax Industries, Inc. v. Aultman*, 669 A.2d 893 (Pa. 1995). In "the application of the alter ego theory to pierce the corporate veil… the burden of proof on this issue rests with the party attempting to negate the existence of a separate entity." *See Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979). There is a strong presumption in Pennsylvania against piercing the corporate veil. *Lumax Indus., Inc. v. Aultman,* 669 A.2d at 895 (Pa. 1994). "Nevertheless, a court will not hesitate to treat as identical the corporation and the individuals owning all its stock and assets whenever justice and public policy demand and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless." *Good v. Holstein*, 787 A.2d 426, 430 (Pa. Sup. Ct. 2001) (internal quotation marks and citations omitted). "The corporate form will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime." *Id.; see also Pearson v. Component Technology Corp.*, 247 F.3d 471 (3d Cir. 2001) (piercing the corporate veil is reserved for circumstances where equity demands that the corporate form be disregarded, such as to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.") (quoting *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967)).

Although there is no definitive test for piercing the corporate veil under Pennsylvania law, courts are instructed to apply a totality-of-the-circumstances test when determining whether to impose individual liability on a shareholder. *First Realvest, Inc. v. Avery Builders, Inc.,* 600 A.2d 601, 604 (Pa. Super. Ct. 1991). That a corporation's stock is owned entirely by one person, *Lumax Indus., Inc. v. Aultman,* 669 A.2d at 895 (Pa. 1994), or owned by members of the same family, *Warren v. Motion Picture Machine Operators,* 118 A.2d 168, 170 (Pa. 1955), does not

make a corporation any less valid. "The accepted rule in Pennsylvania is that a corporation is an entity distinct from its shareholders even if the stock is held entirely by one person." *Coll. Watercolor Grp., Inc. v. Willaim H. Newbauer, Inc.*, 360 A.2d 200, 207 (1976).

In *Ashley v. Ashley*, 482 Pa. 228, 393 A.2d 637 (Pa. 1978), the Pennsylvania Supreme Court set forth the following principles to guide the determination of whether the corporate form should be disregarded and whether one individual or corporation should be deemed the alter ego of another:

> This legal fiction of a separate corporate entity was designed to serve convenience and justice, and will be disregarded whenever justice or public policy demand and where rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless. We have said that whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate entity may properly be disregarded.

*Ashley,* 393 A.2d at 641 (citations omitted); *see Ragan v. Tri-County Excavating,* 62 F.3d 501, 509 (3d Cir. 1995). Not all factors need to be present; rather, the evidence must ultimately show that the corporation was "nothing more than a sham used to disguise [the shareholders'] use of its assets for [their] own benefit in fraud of its creditors." *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 576 (3d Cir. 2018) (internal citations omitted); *see also Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 96 (Pa. Super. 2007) (in deciding whether to pierce the corporate veil, courts must determine if "equity requires that the shareholders' traditional insulation from personal liability be disregarded with ascertaining if the corporate form is a sham, constituting a facade for the operations of the dominant shareholder.")

### 2. Enterprise Theory

Plaintiff alleges it may recover against DBC Real Estate and DBC Construction under the enterprise theory. Under the enterprise or single-entity theory, two or more business entities under some level of common ownership or control are treated as a single entity—or common

enterprise—for the purpose of liability.  At the time Plaintiff filed the Amended Complaint (ECF No. 24), Pennsylvania's version of the veil piercing doctrine recognized that only the owners of the subject business may be held liable when the business was the alter ego of an owner, i.e. the alter-ego theory.  The enterprise theory had not been formally recognized by Pennsylvania state courts, and in fact, Pennsylvania's Superior Court specifically stated Pennsylvania had not adopted the enterprise theory in the case *Mortimer v. McCool*, 225 A.3d 1152 (Pa. Super. Ct. 2019). However, on June 22, 2020, the Pennsylvania Supreme Court granted Mortimer's Petition for Allowance of Appeal, limited to the issue of whether, as a matter of first impression, the Supreme Court should adopt the "enterprise theory" or "single entity" theory of piercing the corporate veil to prevent injustice when two or more sister companies operate as a single corporate combine.  *See Mortimer v. McCool*, 236 A.3d 1043 (Pa. 2020).

On July 21, 2021, Pennsylvania's Supreme Court issued its opinion in *Mortimer v. McCool*, 255 A.3d 261 (Pa. 2021) which unanimously recognized the viability of the enterprise theory of liability.  As previously stated, Defendants each filed Notices (ECF Nos. 52, 53, and 56) to bring this case to the Court's attention and Plaintiff filed an Omnibus Reply (ECF No. 60) to those Notices.

The parties do not dispute that *Mortimer* now governs the Court's review of Plaintiff's allegations against DBC Real Estate and DBC Construction under the enterprise theory, and the factual context of the holding in *Mortimer* is relevant to the analysis of Plaintiff's claims in this case.  In *Mortimer*, plaintiff was seriously and permanently injured when her vehicle was struck by an intoxicated driver who had been served by the employees of the Famous Mexican Restaurant. *Id.* at 265.  The owners of that restaurant had a management agreement with the owner of the restaurant's liquor license, 340 Associates, LLC.  *Id.*  Brothers Michael Andrew McCool and

Raymond Christian McCool ("the brothers") were the sole owners of 340 Associates, and the brothers, along with their father, Ray McCool, owned equal shares of the entity McCool Properties. *Id.* at 265-6. In the underlying dram shop action, Mortimer obtained a judgment of $6.8 million against 340 Associates and numerous other defendants. *Id.* at 266. Under Pennsylvania's Liquor Code, 340 Associates, as the licensee, was jointly and severally liable for the entire judgment, but 340 Associates had no significant assets beyond the liquor license. *Id.*

Mortimer then filed a lawsuit to enforce her judgment by seeking to pierce the corporate veil to reach the assets of McCool Properties and the McCools individually, as owners of 340 Associates. *Id.* Following a bench trial, the trial court applied the *Lumax* factors and found 340 Associates was not undercapitalized, it adhered to corporate formalities, there was no substantial intermingling of corporate and personal affairs between the brothers and 340 Associates, and the corporate form of 340 Associates was not used to perpetuate a fraud or wrongful act, noting that the use of a separate business entity to hold a liquor license is an accepted practice under Pennsylvania law. *Id.* at 269-70. Mortimer sought to impose liability on McCool Properties under the single-entity or enterprise theory, which the trial court noted had not yet been adopted by Pennsylvania's Supreme Court. *Id.* at 270. However, the trial court still analyzed the theory under the following five-part test set forth in *Miners, Inc. v. Alpine Equip. Corp.*, 722 A.2d 691 (Pa. Super. 1998): (1) identity of ownership, (2) unified administrative control, (3) similar or supplementary business functions, (4) involuntary creditors, and (5) insolvency of the corporation against which the claim lies. *Id.* Under this standard, the trial court concluded Mortimer failed to plead a claim for enterprise liability against McCool Properties even though the theory applied. *Id.* at 271.

Mortimer appealed the trial court's ruling. As previously stated, the Superior Court affirmed the trial court's ruling, but reiterated that Pennsylvania had repeatedly refused to adopt the 'single entity' (i.e., enterprise) theory of piercing the corporate veil. *Id.* at 271-272. The Supreme Court then recognized the viability of the enterprise theory. But, in reviewing the record evidence before the trial court, the Supreme Court found Mortimer failed to prove McCool Properties was liable under the enterprise theory. The Supreme Court also agreed with the trial court's application of the *Lumax* factors to analyze the alter ego theory of liability as to the brothers and the *Miners* factors to analyze the enterprise theory as to McCool Properties. However, *Mortimer* cautioned there is no clear test or settled rule in Pennsylvania as to exactly when the corporate veil can be pierced and when it may not be pierced, requiring courts to conduct a "holistic, case-by-case analyses" for each case. *Id.* at 268.

### III.   Analysis

As the parties have had full opportunity to submit briefs to address the impact of *Mortimer* on their respective positions, the Court will not address any arguments raised by the parties that are no longer viable under *Mortimer*.

As a preliminary, but significant, issue, Defendants largely ignore the procedural posture in *Mortimer* and many of the other cases cited in the briefing on this issue. The procedure of *Mortimer* and other cases relied upon by the parties is significant because, in the vast majority of these cases, the court relied on an evidentiary record to find that veil piercing liability did not attach. In this case, Defendants request this Court to make the same finding at the most preliminary stage of these proceedings and without the benefit of an evidentiary record. This is contrary to the guidance of *Mortimer* to conduct a fact specific, "holistic" analysis and the jurisprudence of this district. *See Chambers v. SD Holdings, LLC*, Civil Action No. 17-70, 2017 U.S. Dist. LEXIS

199502, at *3-4 (W.D. Pa. Dec. 5, 2017) (denying motions to dismiss on breach of contract and veil piercing claims without prejudice to the parties to renew their arguments for summary judgement); *Brocious Trucking, Inc. v. BFL, Inc.*, No. 09-CV-741, 2010 U.S. Dist. LEXIS 11970, at *11-12 (W.D. Pa. Feb. 11, 2010) (denying motion to dismiss because the plaintiff had stated sufficient veil-piercing allegations); *Winner v. Etkin & Co.*, No. 07-CV-903, 2007 U.S. Dist. LEXIS 66009 (W.D. Pa. Sept. 6, 2007) (denying motion to dismiss because "[t]he veil-piercing doctrine requires a multi-factor, factually-intensive inquiry and is not to be presumed lightly").

This also is not a case where the veil piercing allegations are conclusory or unsupported by factual pleadings as Plaintiff has alleged numerous, detailed factual allegations in support of its veil piercing claims. *See CMC GH Sisak d.o.o. v. PTC Grp. Holdings Corp.*, Civil Action No. 15-1357, 2016 U.S. Dist. LEXIS 127792 (W.D. Pa. Sep. 20, 2016) ("CMC did not set forth factual allegations sufficient to plausibly show that Seamless acted as an alter ego of PTC during any time relevant to the claims set forth in the amended complaint"); *St. Germain v. Wisniewski*, Civil Action No. 15-1279, 2017 U.S. Dist. LEXIS 5917 (W.D. Pa. Jan. 17, 2017) ("Plaintiff still has not pled anything beyond conclusory allegations and legal assertions.").

Moreover, while *Mortimer* repeatedly emphasized the rareness of circumstances that would warrant veil piercing, *Mortimer* expressly did not foreclose the possibility of enterprise liability ever being established, though it determined it would not apply to the facts of that case ("while we conclude that a narrow form of what we will refer to as 'enterprise liability' may be available under certain circumstances, it cannot apply under the facts of this case." *Id.* at 266; "[the] piercing doctrine exists because legally well-founded corporations can be abused in ways that adhere to the letter of the law but equity will not tolerate." *Id.* at 289; "[w]e may validate the prospect of a viable claim for enterprise liability while underscoring that the fundamental concern

for its use only in cases of great injustice and inequity must remain the lodestar of piercing jurisprudence." *Id.* at 284). In analyzing the enterprise theory in *Mortimer*, the Pennsylvania Supreme Court examined many of the same principles used in analyzing the alter ego theory, namely, the *Lumax* and *Miners* factors. Applying the same factors, the Court finds Plaintiff has sufficiently pleaded its claims in the Amended Complaint (ECF No. 24).

### A. Alter Ego Theory

As previously stated, Pennsylvania state and federal courts consider the following non-exclusive factors to determine an individual owner/parent company's derivative liability: (i) its subsidiary's gross undercapitalization for its purpose; (ii) failure to observe corporate formalities; (iii) nonpayment of dividends; (iv) the insolvency of the subsidiary; (v) siphoning of funds of the corporation by the dominant stockholder; (vi) nonfunctioning of other officers or directors; (vii) absence of corporate records; and (viii) whether the corporation is merely a facade for the operations of the dominant stockholder or stockholders. *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981) (mirroring the factors set forth in *Lumax Industries, Inc. v. Aultman,* 669 A.2d 893, 895 (Pa. 1995). Further, the situation "must present an element of injustice or fundamental unfairness, but a number of these factors can be sufficient to show such unfairness." *Id.* No single factor is dispositive; rather, a determination on veil-piercing is to be made based on the totality of the circumstances. *See Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003).

As to these factors, Plaintiff has pleaded facts showing DBC was undercapitalized, there was a lack of adherence to corporate formalities, and the Hesses engaged in substantial intermingling of funds with DBC.  First, Plaintiff has pleaded DBC was not appropriately capitalized to address its liabilities at the time Plaintiff was making the Southwind repairs from

2014 to 2016 (ECF No. 24 at ¶¶26, 31-34, 65-74).  Defendants contend that in order to satisfy the factor of undercapitalization, Plaintiff must instead demonstrate DBC was either undercapitalized when it was formed, or alternatively, when it constructed the Southwind project between 2005 and 2009 (ECF No. 31 at p. 14).  While undercapitalization during those time periods may also be relevant, Plaintiff's allegations of DBC's accountants expressing concern over its financial viability, DBC's inability to pay for the Southwind repairs or satisfy the judgment against it, and its subsequent declaration of bankruptcy, sufficiently plead undercapitalization.

Second, Plaintiff has sufficiently pleaded the Hesses and DBC did not adhere to corporate formalities.  Plaintiff alleges the Hesses have conducted, managed and controlled DBC's affairs as shareholders without regard to the separate existence of the corporate entity and have used the corporate entity to injure Plaintiff and other creditors who have appeared in the bankruptcy proceeding (ECF No. 24 at ¶79).  The Hesses argue the allegations in the Amended Complaint instead support that DBC adhered to corporate formalities, as, for example, Plaintiff pleads that DBC maintained record books from 1991 to 2018 and also maintained corporate minutes.  *Id.* at ¶¶57-62.  However, Plaintiff has pleaded that DBC kept only meager records from 1991 to 2018, that it maintained no corporate minutes after 2018, and that money flowed through and between DBC, John Hess, Terri Hess, DBC Real Estate, and DBC Construction (ECF No. 24 at ¶¶57-62).  Plaintiff's allegations are sufficient to plead DBC and the Hesses failed to observe corporate formalities and that this behavior may be considered for the purpose of veil piercing.

Third, Plaintiff pleads that the Hesses substantially intermingled funds with DBC for several years (ECF No. 24 at ¶¶52-55).  The Amended Complaint provides considerable detail as to the Hesses' personal use of funds from DBC.  The Hesses argue Plaintiff's allegations relate to corporate distributions and/or non-deductible expenses which were made to Hess, or on behalf of

Hess, consistent with the structure of an S-Corporation to pass profits to its shareholders (ECF No. 31 at p. 20).  While the Hesses may have a credible explanation for their extensive personal use of DBC's funds, at this stage in the proceedings, the Court finds Plaintiff has sufficiently pleaded the Hesses substantially intermingled funds by using the funds of DBC for their own personal interests.

## B. Enterprise Theory

The *Mortimer* Court recognized the following factors set forth in *Miners, Inc. v. Alpine Equip. Corp.*, 722 A.2d 691 (Pa. Super. 1998) as being relevant to the analysis for enterprise liability: (1) identity of ownership, (2) unified administrative control, (3) similar or supplementary business functions, (4) involuntary creditors, and (5) insolvency of the corporation against which the claim lies.  *Id.* at 695.  However, while these factors are to be considered by courts in future cases, like the factors for the alter ego test, they only "embody the many considerations that might aid in determining whether the corporate form has been abused."  *Mortimer v. McCool*, 255 A.3d at 286 (2021).  The court noted further it was not "bound to that test."  *Id.* at 284.

The DBC Defendants assert *Mortimer* adopted the vertical, triangular piercing formation, in lieu of the horizontal piercing theory, and that Plaintiff has not alleged sufficient facts to support a finding of enterprise theory against the DBC Defendants through the piercing method explained in *Mortimer*.  Because of the timing of the issuance of that opinion, Plaintiff obviously did not have the benefit of *Mortimer's* guidance when drafting the Amended Complaint (ECF No. 24). Nonetheless, the Court need not determine if *Mortimer* adopted one specific method of piercing to the exclusion of another because the Court finds Plaintiff has sufficiently pleaded a basis for veil piercing against the Hesses through DBC and for reverse piercing from the Hesses to the DBC Defendants, i.e. the same method utilized in *Mortimer*.

In *Mortimer*, the court determined whether triangular piercing was warranted by analyzing whether there was, at least, substantial common ownership between the entities.  In that case, the court found that the evidence showed Raymond, the father of the brothers, was a full one third owner of McCool Properties, that there was no evidence Raymond exercised meaningful control over 340 Associates' operations or management, and that he was therefore an innocent party. Further, there was no basis to pierce the veil between 340 Associates and the brothers as they maintained appropriate separation between their personal interest and 340 Associates' corporate affairs and coffers, McCool Properties itself had not material ownership interest or administrative control over 340 Associates, and there was no basis to find the brothers "individually blameworthy enough to warrant piercing."  *Id.* at 287.

In this case, Plaintiff has pleaded that DBC was controlled and owned by John and Terri Hess, and that John Hess is the sole owner of DBC Construction and DBC Real Estate.  Plaintiff has pleaded facts to demonstrate the Hesses did not maintain appropriate separation between their personal interests and DBC's "corporate affairs and coffers."  Plaintiff does not assert DBC Real Estate and DBC Construction have material ownership or control over DBC, but Plaintiff alleges these entities should be liable under the enterprise theory as they are part of a common DBC group of entities controlled and owned by Hess (ECF No. 24 at ¶88).  Plaintiff contends Hess operates DBC, DBC Real Estate, and DBC Construction out of the same office and that the three entities share computer servers, equipment, and employees.  *Id.* at ¶51.  Plaintiff has also pleaded that the Hesses routinely moved funds, often hundreds of thousands of dollars, between their personal accounts, DBC accounts, DBC Real Estate accounts and the account of DBC Construction LLC. *Id.* at ¶51.  At Count III, Plaintiff pleads Hess's alleged misrepresentations make him "individually blameworthy" for the Southwind repairs.  There is a genuine issue of factual dispute as to John

and Terri Hess's ownership of DBC, and the Court is without information to determine if John Hess is the substantial owner of DBC, as well as the sole owner of DBC Real Estate and DBC Construction, but the Court notes that under Defendants' arguments, Hess is the sole owner of DBC, DBC Real Estate, and DBC Construction.

*Mortimer* explained that "enterprise liability in any tenable form must run up from the debtor corporation to the common owner, and from there down to the targeted sister corporation(s)...[b]ut this requires a mechanism by which liability passes through the common owner to the sibling corporation." *Id.* at 285.  In this case, Plaintiff has alleged liability between the DBC and Hess and from there down to DBC Real Estate and DBC Construction.  The Court finds Plaintiff's allegations are sufficient to satisfy a claim for veil piercing under the enterprise theory at this preliminary stage.

### C. Injustice Element

Defendants contend Plaintiff's veil piercing efforts fail to demonstrate an overall element of injustice, unfairness, or fraud.  Both the alter ego theory and the enterprise theory require a finding of "some fraud, wrong, or injustice" as the basic starting point for determining if piercing is warranted.  The corporate form may be disregarded "whenever justice or public policy demand, such as when the corporate form has been used to defeat public convenience, justify wrong, protect fraud, or defend crime." *See Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC,* 194 A.3d 1010, 1035 (Pa. 2018).  Fraud in its narrow sense need not be shown, but Pennsylvania courts will disregard the corporate form "whenever it is necessary to avoid injustice," *Vill. at Camelback Prop. Owners Ass'n v. Carr,* 538 A.2d 528, 533 (1988), and so long as "the rights of innocent parties are not prejudiced nor the theory of corporate entity rendered useless." *Lumax Indus., Inc. v. Aultman,* 669 A.2d at 895 (Pa. 1994).

In this case, Plaintiff does not plead that DBC's corporate form was used to perpetuate a fraud at this time.  However, Plaintiff asserts Defendants engaged in corporate misbehavior by commingling personal affairs and finances with that of DBC, DBC Real Estate and DBC Construction, paid personal expenses with these corporate assets, failed to maintain corporate formalities between these entities, ran DBC in an undercapitalized state, and strategically drained DBC of all assets of value (ECF No. 24 at ¶40).  Defendants now seek to evade the debts of DBC, including Plaintiff's state court judgment, and continue to thrive in business operations (ECF No. 24 at ¶42).

The Court finds Plaintiff has sufficiently pleaded allegations demonstrating veil piercing is necessary to avoid injustice at this preliminary stage of the case.  However, the Court notes *Mortimer* stressed that there is no evidence of "scrupulous business owners" being "punished for availing themselves of the option to distribute related businesses across multiple corporate entities to secure liability protection and legal advantage" and that veil piercing is only to be applied when the misconduct was "truly egregious."

### D.  Involuntary/Voluntary Creditor

Defendants argue *Mortimer* limited the enterprise liability theory to involuntary creditors, and Plaintiff thus cannot avail itself of this theory as it is a voluntary creditor that chose to contract with DBC.  However, the Court does not find *Mortimer* to be definitive on whether or not circumstances may exist to allow a voluntary creditor to assert enterprise liability.  Further, *Mortimer* expressly notes that the distinction between a voluntary and involuntary creditor is debated:

> The *Miners* court did not address the distinction between voluntary and involuntary creditors, but it looms large in case law and scholarship. One court has observed that involuntary creditors are "those who did not rely on anything when becoming creditors…Tort victims are classic examples." *In re LMcD, LLC*, 405 B.R. 555, 566 (Bankr. MD. Pa. 2009) (citing, *inter alia*, Mary Elisabeth Kors, *Altered Egos:*

*Deciphering Substantive Consolidation*, 59 U. PITT. L. REV. 381, 419 (1998)). Voluntary creditors, by contrast, have the opportunity to investigate factors bearing upon their risk of loss before entering into a transaction with a corporate counterparty. *Id.* (citing *East End Mem. Ass'n v. Egerman*, 514 So. 2d 38, 44 (Ala. 1987)). This has led some commentators to argue for the adoption of divergent approaches to piercing depending upon whether the creditor is voluntary or involuntary. *See, e.g.*, Kurt A. Strasser, *Piercing the Veil in Corporate Groups*, 37 Conn. L. Rev. 638 (2005) ("[A] new consensus is emerging in the commentary that limited liability may well not be justified in tort cases…"); *see also* Franklin A. Gevurtz, *Piercing Piercing: An Attempt to Lift the Veil of Confusion Surrounding the Doctrine of Piercing the Corporate Veil*, 76 Or. L. Rev. 853, 907 (1997) ("[O]ne must always focus on the reasons why the corporation was liable to contract creditors or tort victims in the first place. For contract creditors, corporate liability is what the parties agreed; for tort victims the goal of liability is to internalize accident costs…The key to internalizing accident costs is insurance. Hence, lack of insurance to cover reasonably foreseeable risks provides the primary grounds to pierce in favor of tort claimants.").

*Mortimer v. McCool*, 255 A.3d at 289 (Pa. 2021).

    In this case, the issue of whether Plaintiff is a voluntary or involuntary creditor is disputed. Plaintiff contends it is an involuntary creditor as it is the assignee of the Southwind unit owners' UTCPL claims against DBC[2] and that the arbitration award that led to the state court judgment is based, in part, on its own tort claims against DBC. Further, Plaintiff also argues that when its predecessor-in-interest entered into the construction contracts with DBC for the Southwind construction in 2004-2006, Plaintiff did not have the ability to evaluate the risk of contracting with DBC or the Hesses (ECF No. 60 at p. 9), and that it was not able to discover DBC's inability to pay for the judgment until after the judgment was entered in 2019, thereby drawing into question whether Plaintiff had the opportunity to evaluate its risk when contracting with DBC. As this issue requires an analysis of the facts and circumstances of the case, the Court will not rule on Plaintiff's

---

[2] The Court notes Defendants contest the validity of these assignments, however, as that issue is not dispositive of whether or not Plaintiff has sufficiently stated its claims in the Amended Complaint (ECF No. 24), and relates to facts beyond the pleadings, the Court will reserve ruling on that issue at this time.

status as a voluntary or involuntary creditor at this preliminary stage in the proceedings, but as stated above, finds that Plaintiff has sufficiently pleaded its enterprise theory of liability against the DBC Defendants.

### E. Veil Piercing as a Cause of Action

Defendants uniformly assert that piercing the corporate veil is an equitable remedy, not an independent cause of action, and for that reason, Plaintiff's Counts I through III cannot stand alone and must be filed together with substantive legal claims in a single proceeding against the parties. Defendants also question Plaintiff's ability to add them as parties post-judgment without the ability to contest the underlying liability and damages at issue in the arbitration award and subsequent state court judgment from the Southwind litigation.

The Pennsylvania Supreme Court stated in *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010 (Pa. 2018) that "[a] request to pierce the corporate veil is not an independent cause of action." *Id.* at 1035. Piercing the corporate veil via the alter ego theory "is a means of imposing liability established in an underlying cause of action" and not a cause of action on its own. *Id. See also, CMC GH Sisak D.O.O. v. PTC Grp. Holdings Corp*, No. CV 15-1357, 2016 U.S. Dist. LEXIS 127792 (W.D. Pa. Sept. 20, 2016) (explaining that allegations for veil-piercing "are better suited in the body of the amended complaint" and not as a cause of action).

However, as Plaintiff points out, Pennsylvania state and federal courts have also recognized a judgment creditor may file an independent lawsuit as an enforcement action. *See, e.g., Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 96 (Pa. Super. 2007) (action to enforce state court judgment by piercing the corporate veil filed against dominant shareholder); *Essex Ins. Co. v. Miles*, Civil Action No. 10-3598, 2010 U.S. Dist. LEXIS 128888 (E.D. Pa. Dec. 3, 2010) (stand-alone action to collect on a federal judgment by piercing the corporate veil); *Madonna v.*

*Francisco*, No. 13-807, 2014 U.S. Dist. LEXIS 32523, at *21 (E.D. Pa. Mar. 13, 2014) (noting that piercing the corporate veil is not a cause of action unto itself, but that plaintiff filed suit to hold defendant liable for a state judgment obtained against other entities). Indeed, the procedure in *Mortimer* indicates plaintiff commenced that lawsuit as a veil piercing action against the defendants in an effort to enforce her state court judgement.

Plaintiff brings this case as a judgment creditor filing an independent enforcement action against Defendants. Notably, Count IV of the Amended Complaint is a claim for "Satisfaction and Enforcement of Judgment" (ECF No. 24). Plaintiff was authorized by Judge Taddonio to assert this action on behalf of the Bankruptcy Trustee and any recovery in this action would belong to the bankruptcy estate and would be apportioned among and for the benefit of all qualified creditors. The parties do not dispute that veil piercing is an equitable remedy, and while Plaintiff may have improperly styled its veil piercing claims as independent causes of action, as discussed above, Plaintiff has sufficiently alleged facts in support of its veil piercing requests. Therefore, there is no basis to dismiss Plaintiff's requests for veil piercing as a form of equitable relief in this enforcement action.

### F. Tortious Misrepresentation at Count III

Hess contends Plaintiff's claims at Count III fail because Plaintiff did not identify any underlying tort committed by Hess as Plaintiff fails to allege he was negligent or committed a trespass to property or fraud (ECF No. 31 at p. 23). Hess also claims any tort claims against him are time barred as a tort claim must be commenced within two years. *See* Pa. Cons. Stat. Ann. §5524. Hess asserts Plaintiff was aware of the water infiltration problems during the construction of the project between 2005-2009, and Plaintiff filed its state court complaint against DBC for the

water infiltration problems on September 25, 2014. The instant lawsuit filed in 2021 would therefore be beyond the two year statute of limitations for tort based claims against Hess.

Plaintiff has styled Count III as "Veil Piercing/Personal Liability of John M. Hess Based on His Tortious Participation" (ECF No. 24 at ¶¶89-95). In that count, Plaintiff pleads Hess's misrepresentations regarding his commitment to repair the water infiltration issues and the failure of his leak crew to make appropriate repairs caused substantial damage, amounting to millions of dollars in repairs that were undertaken by Plaintiff. Plaintiff asserts that its tort claims against Hess are not barred by the statute of limitations under Pennsylvania's discovery rule. The Third Circuit has described:

> Under the Pennsylvania discovery rule, the "commencement of the limitations period is grounded on 'inquiry notice' that is tied to 'actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause.'" *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011) (internal quotation omitted).The statute of limitations accordingly begins to run when the plaintiff knew, or exercising reasonable diligence, should have known (1) he or she was injured and (2) that the injury was caused by another. *See Coleman v. Wyeth Pharms.*, 2010 PA Super 158, 6 A.3d 502, 510-511 (Pa. Super. Ct. 2010).

*Adams v. Zimmer US, Inc.*, 943 F.3d 159, 163 (3d Cir. 2019).

Hess correctly states that, under Pennsylvania law, the statute of limitations for tort claims is two years. 42 Pa. C.S.A. § 5524. The limitations period generally begins to run "when an injury is inflicted." *Adams v. Zimmer US, Inc.*, 943 F.3d at 163 (3d Cir. 2019). "[W]here the plaintiff's injury or its cause was neither known or reasonably ascertainable," however, "the 'discovery rule' tolls the statute of limitations." *Id.* (internal citation omitted). The inquiry into whether a party was able, in the exercise of a reasonable diligence, to know of his injury and its cause, ordinarily raises questions of fact for a jury to decide. *Id.* at 164. "Where, however, reasonable minds would

not differ in finding that a party knew or should have known [i]n the exercise of reasonable diligence of his injury and its cause, … the discovery rule does not apply as a matter of law." *Id.*

Plaintiff pleads it was not aware of DBC's inability to satisfy the state court judgment until December 11, 2019, and even applying the earlier dates of when Plaintiff obtained the arbitration award on March 4, 2019, or the state court judgment on April 29, 2019, its claim would still be timely.  Plaintiff's pleadings raise issues of fact as to what knowledge Plaintiff had and when it obtained that knowledge, and therefore, the Court will not dismiss Count III for being time-barred at this time.

Further, at this stage, the Court does not necessarily view Count III as a tort claim, but rather, like Plaintiff's other veil piercing allegations, as a claim to enforce its previously obtained state court judgment from the Southwind litigation against Hess.  *See Madonna v. Francisco*, No. 13-807, 2014 U.S. Dist. LEXIS 32523, at *10 (E.D. Pa. Mar. 13, 2014) ("the claims do not appear to be fraud claims …rather, as noted above, Mr. Madonna brings claims to enforce the previously obtained state court judgment against Mr. Francisco by endeavoring to pierce the corporate veil and against AvanuOne by asserting successor liability.").  Under Pennsylvania law, "[a]n action upon a judgment or decree of any court of the United States or of any state" must be commenced within four years.  42 Pa. C.S.A. § 5525(a)(5).  Insofar as Plaintiff seeks the equitable remedy of veil piercing based on Hess's tortious misrepresentations, the state court judgment was entered in 2019, and thus the enforcement claim against Hess is timely.

### G.  Motions by Defendant Terri Hess (ECF Nos. 56 and 63)

The Court notes Terri Hess denies any ownership in DBC and seeks for the Court to review documents outside the record to dismiss her from this case in her Motion for Leave to File *Instanter* Dispositive Judicial Admissions by the Trustee and New Legal Authority in Support of Defendant

Terri Hess's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 56) and her Motion for Leave to Submit Matters Outside the Pleadings Pursuant to FRCP Rule 12(d)(ECF No. 63).

In her Motion at ECF No. 56, Terri Hess requests that the Court take judicial notice of alleged admissions from the Bankruptcy Trustee that indicate John Hess was the sole owner of DBC. Specifically, these "admissions" are averments from the Trustee's complaints against Terri Hess, John Hess, and DBC Construction, LLC in DBC's pending bankruptcy actions (ECF Nos. 56-1 and 56-2).

To be binding, [judicial] admissions must be unequivocal. *Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)*, 493 F.3d 345, 377 (3d Cir. 2007) (internal citation omitted). Similarly, they must be statements of fact that require evidentiary proof, not statements of legal theories. *Id.* Further, judicial admissions are binding for the purpose of the case in which the admissions are made including appeals but do not extend to other actions. *Enter. Rent-A-Car Wage & Hour Emp't Practices Litig. v. Enter. Rent-A-Car Co.*, 735 F. Supp. 2d 277, 330 (W.D. Pa. 2010) (internal citation omitted).

Plaintiff pleads Terri Hess was a shareholder, officer and director of DBC, and in support, Plaintiff attaches DBC's corporate minutes from 1995 to 2018 identifying Terri Hess as a shareholder and secretary of DBC (ECF No. 24 at ¶4, ECF No. 24-1). On this basis, Plaintiff contests whether Defendant John Hess is the sole owner of DBC in its Reply in Opposition to Defendant Terri Hess's Motion for Leave to File *Instanter* Dispositive Judicial Admissions by the Trustee (ECF No. 61). In support of its position, Plaintiff also provided an affidavit from the Bankruptcy Trustee which states that the averments in the Trustee's complaints were based only on information he received from John M. Hess, DBC, and information submitted by John Hess and DBC to Dollar Bank (ECF No. 61-2 at ¶9). Ultimately, the bankruptcy cases and this case are

25

not the same case, and the DBC corporate minutes and the Trustee's affidavit statements demonstrate that the alleged admissions are not "unequivocal." Accordingly, the Court will deny Terri Hess's request to consider the admissions.

The Court also denies Terri Hess's request to submit matters outside the pleadings under Rule 12(d). In her motion, Terri Hess seeks to submit to the Court documents indicating John Hess is the sole owner of DBC on the basis that these documents were relied on to draft the Trustee's complaints. Under Rule 12(d), when either or both parties present extraneous material as part of a motion or response in opposition, the court has the discretion to accept the extraneous material and convert the Rule 12(b)(6) motion to one for summary judgment pursuant to Fed. R. Civ. P. 56, or decide it without the additional material pursuant to Fed. R. Civ. P. 12(b). *Rose v. Bartle*, 871 F.2d 331, 339-40 (3d Cir. 1989); *see also, Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) (district court not required to accept the matters outside the pleadings as it has discretion to confine its ruling to the complaint and the motion to dismiss).

In its Reply in Opposition to Motion for Leave to Submit Matters Outside the Pleadings Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure in support of Defendant Terri Hess's Motion to Dismiss Plaintiff's Complaint (ECF No. 65), Plaintiff again contests whether John Hess is the sole owner of DBC. The Court finds Plaintiff has pleaded a genuine issue of material fact as to the ownership of DBC and will deny the request to submit matters outside the pleadings. Indeed, this factual dispute over Terri Hess's ownership interests and control over DBC serves to underscore the inappropriateness of her dismissal at this time and the need for discovery on this issue.

## IV.  Conclusion

In reviewing whether veil piercing is appropriate, the vast majority of courts have conducted a detailed analysis of the facts and circumstances of a case based on the evidentiary

record before the court.  The Court also notes Defendants assert multiple arguments referencing facts beyond the pleadings to contend Plaintiff's pleadings are factually inaccurate or misleading. The number of factual disputes already raised to the Court in this case further evidences the need for discovery on Plaintiff's claims.  As such, the Court will not dismiss Plaintiff's claims at this preliminary stage.

Though Plaintiff has sufficiently pleaded facts to support veil piercing at this stage of the litigation, the Court reiterates *Mortimer's* caution of the rareness of circumstances where veil piercing is warranted and the strong presumption against veil piercing under Pennsylvania law. Ultimately, however, the Court must have the benefit of an evidentiary record to conduct the veil piercing analysis required under Pennsylvania law.  Accordingly, the Court DENIES Defendants' Motions to Dismiss (ECF Nos. 28, 30, 32, and 34), but this denial is without prejudice to the Defendants renewing their arguments at summary judgment and/or trial, as appropriate.  The Court also DENIES Defendant Terri Hess's Motion for Leave to File *Instanter* Dispositive Judicial Admissions and New Legal Authority in Support of Terri Hess's Motion to Dismiss the Amended Complaint (ECF No. 56)[3] and Motion for Leave to File to Submit Matters Outside the Pleadings Pursuant to FRCP Rule 12(d) (ECF No. 63).

Date: *April 4, 2022*

Stephanie L. Haines
United States District Judge

---

[3] To be clear, the Court has considered the *Mortimer* case as requested by Terri Hess in this motion, but the Court otherwise denies the motion's principle request to consider judicial admissions.